In the Matter of the Arbitration Between
MELUN INDUSTRIES, INC.,
Petitioner,

and

Michael A. Strange, Respondent.

No. 90 Civ. 2027 (PNL).

United States District Court,
S.D. New York.

Nov. 13, 1990.

Coudert Brothers, New York City (Wendy L. Addis, of counsel), for Melun Industries, Inc.

Martin S. Berglas, New York City, for Michael A. Strange.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Petitioner, Melun Industries, Inc. ("Melun"), moves to confirm an arbitration award of $519,018 in its favor against respondent Michael A. Strange. Strange crossmoves to vacate the award on the grounds that the arbitrator exceeded the authority granted him under an agreement between the parties.

### Background

This action concerns disputed adjustments to the purchase price of stock sold to Melun by Strange in late 1986.

On November 25, 1986, Melun and Strange entered into a Stock Purchase Agreement (the "Agreement") whereby Melun would purchase all of the shares of S & C Holding Company, Inc. ("S & C") from Strange. The purchase price was to be set at 80% of the "audited book value" of S & C as of August 31, 1986, "as audited by Harrison H. Halby, independent certified public accountant for [S & C], and as reviewed and accepted by Coopers & Lybrand, independent certified public accountant for [Melun]." Once Coopers & Lybrand had reviewed and accepted Halby's figures, those figures were to be known as the "Original Book Value." Agreement ¶ 1(b). Melun was to pay the purchase price of 80% of Original Book Value at the

closing. If Coopers & Lybrand did not accept the figures provided by Halby, Melun had the right to decline to close and to terminate the Agreement. Agreement ¶ 13.

The Agreement provided that after closing an adjustment would be made to the purchase price to cover "increase[ ] or decrease[ ] from the Original Book Value during the period from September 1, 1986 to the Closing Date," to the extent it exceeded $60,000, according to the following procedures:

(i) As soon as possible after the Closing, [Strange and S & C] agree to deliver to Coopers and Lybrand all documents necessary to permit said accountants to determine the amount, if any, by which the book value of [S & C] increased or decreased from the Original Book Value during the period from September 1, 1986 to the Closing Date. Within fifteen business days after receipt by said accountants of all such documents, [Melun] shall deliver to [Strange] a statement (the "Post–Closing Statement") prepared by said accountants either stating that no adjustment to the Original Book Value is required, or setting forth the amount of the adjustment, the basis therefor and the adjusted book value of [S & C] as of the Closing Date (the "Adjusted Book Value").

\*    \*    \*    \*    \*    \*

(iii) The Post–Closing Statement shall be binding upon [both parties] for all purposes unless [Strange] gives written notice of disagreement with the Adjusted Book Value within ten days after receipt by [Strange] of the Post–Closing Statement, specifying in reasonable detail the nature and extent of such disagreement. If [the parties] are unable to resolve any such disagreement within ten days after [Strange] gives [Melun] notice thereof, the disagreement shall be referred for final determination to [an accounting firm acting as arbitrator].... [T]he determination of such accounting firm shall be con-

clusive and binding upon [the parties] for all purposes. [The parties] agree that judgment may be entered upon the determination of such accounting firm in any court having jurisdiction over the party against which such determination is to be enforced....[1]

Agreement ¶ 1(d)(i), (iii). . . .

In late November, 1986, Strange sent the August 31, 1986 financial statements to Melun for Cooper & Lybrand to review. Coopers & Lybrand apparently had some doubts about the accuracy of that statement, and informed Melun before the closing, but Melun neither made objection nor attempted to defer the closing until its accountants could complete their review. The closing went ahead on December 19, 1986. The Original Book Value, as presented to Melun's accountants, resulted in a purchase price at closing of $670,400, which Melun paid.

On January 5, 1987, Strange sent Coopers & Lybrand a copy of S & C's November 30, 1986 financial statement, as provided in ¶ 1(d)(i).[2] On January 26, 1987, Coopers sent Strange a document describing the nature and amounts of Melun's proposed adjustments. This document, which stated an adjustment of $391,604, was in the form of an internal memorandum from one Coopers employee to another, and was marked "draft." This was the only document sent to Strange within fifteen business days of Strange's provision of the November 30, 1986 financial statement. On February 2, 1987, within the ten day response time provided in the Agreement, Strange sent Melun his response to the Coopers memorandum, objecting to all but a few of the proposed adjustments.

On May 6, 1987, Melun sent Strange a document purporting to be the Post–Closing Statement required by the agreement. This document retained the same categories of proposed adjustments as had been provided in the January 26 memorandum, but dramatically increased the amounts demanded by

---

1. The Agreement provided that once the difference between the Adjusted Book Value and the Original Book Value was determined, either by agreement or after arbitration, the party owing was to pay the other any difference in excess of $60,000. Agreement ¶ 1(b)(ii).

2. Although the closing did not occur until December 19, 1986, the parties have apparently agreed to treat November 30 as the Closing Date, so that the post-closing adjustment period runs from August 31, 1986 through November 30, 1986, the first quarter of S & C's fiscal year.

Melun. It demanded $570,018 over and above the amounts agreed to by Strange on February 2.[3] On May 18, 1987, Strange rejected these increases as untimely. He sent Melun a check for $160,498, representing the adjustments in the January 26 memorandum with which he agreed, less the $60,000 exclusion. Melun acknowledged but did not cash the check, indicating that it would be held "as a deposit toward amounts due." Melun contended that its May 6 statement was not untimely, and that the delay was due to Strange's failure to provide necessary financial data to evaluate the November financial statement. An arbitration was held to resolve the disputed adjustment.

The arbitrator, Robert Graham of Peat, Marwick Main & Co., issued an award in favor of Melun in the amount of $519,018, based in large part on the adjustments proposed by Melun in the May 6 Post–Closing Statement. Strange requested that the arbitrator modify the award, arguing that the arbitrator had misunderstood the scope of the authority granted to him by the Agreement. He contended that the arbitrator erred procedurally and substantively. His procedural objection is that the arbitrator considered claims raised by Melun after the deadline set by the Agreement. The substantive objection is that the arbitrator went beyond the scope of his authority. Strange contends that the only question submitted to the arbitrator was the change in book value resulting from the company's operation during the quarter from August 31 to November 30 and that the arbitrator far exceeded his authority by revising the already accepted Original Book Value as of the August 31 contract date. The arbitrator's award requires Strange to return to Melun more than he received in payment for his shares. The arbitrator refused to modify the award.

Strange now reiterates the same two objections in seeking to vacate the arbitrator's award. Melun moves to confirm the arbitrator's award.

## Discussion

■ Section 10(d) of the Federal Arbitration Act, 9 U.S.C. § 10(d), provides that a federal court may vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." This provision is generally accorded a narrow reading. See, e.g., *Andros Compania Maritima v. Marc Rich & Co.*, 579 F.2d 691, 703 (2d Cir.1978); *Mobil Oil Indonesia v. Asamera Oil Ltd,* 487 F.Supp. 63 (S.D.N.Y.1980); *Amoco Overseas Oil v. Astir Navigation Co.,* 490 F.Supp. 32 (S.D.N.Y.1979) ("an award may not be vacated under [Section 10(d) ] on the grounds that the arbitrator's opinion fails to interpret correctly the law applicable to the issue in dispute . . . , or misinterprets the underlying contract, even if that misinterpretation is 'clearly erroneous' "). However, courts will vacate an award where the arbitrator has ruled on issues not presented to him by the parties, or otherwise exceeded the scope of the authority granted to him by the contractual provision providing for arbitration. See, e.g., *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–54, 4 L.Ed.2d 1409 (1960); *Lackawanna Leather Co. v. United Food & Commercial Workers,* 692 F.2d 536, 538–39 (8th Cir.1982); *Piggly Wiggly Operators' Warehouse v. Piggly Wiggly Operator's Union,* 611 F.2d 580, 583 (5th Cir.1980).

### A. The Arbitrator's Consideration of the May 6 Proposals

Strange argues that the Agreement purposely placed restrictions on the time periods with which both parties could suggest post-closing adjustments or file objections. He contends that, under this strict schedule, Melun's May 6 "Post–Closing Statement" was not timely, and therefore should not have been used by the arbitrator. He contends that the only adjustments proposed by Melun within the fifteen business day deadline were those contained in the draft memorandum

---

**3.** Thus, for example, certain real estate writedowns which had been estimated at $81,367 in the January memorandum were now estimated at $361,379; a first quarter loss, which Coopers had previously calculated at $83,676, was now asserted to be $264,307.

dated January 26, 1987. Thus, Strange contends, the maximum deficiency he could have been asked to pay was $331,607, being the adjustment of $391,607 demanded in Coopers' January 26 document, minus the $60,000 agreed exclusion. Of this, Strange notes, he voluntarily paid $160,458. Thus, he claims the maximum additional assessment the arbitrator properly could have made against him was $171,146. He argues that the arbitrator exceeded his authority by making an award based on claims raised outside the time provided in the Agreement.

Melun contends that the May 6 document was timely because the Agreement provides for the fifteen day clock to begin running only after Strange delivered "all documents necessary" to permit Coopers & Lybrand to determine whether and by how much the book value had changed. Melun contends that, while Strange provided the November 30 financial statements on January 5, 1987, he did not provide other necessary documents until much later, in late April and early May.[4] Melun argues that the timeliness of Melun's May 6 Post–Closing Adjusted Statement was for the arbitrator to decide, and the court should not second guess his decision. Strange responds that the issue of timeliness is completely appropriate for judicial review, because it concerns the extent of the arbitrator's jurisdiction—whether he was permitted under the Agreement establishing his authority to consider claims raised outside the schedule provided. Strange contends that, unlike a general arbitration provision granting broad power to resolve all disputes, ¶ 1(d) specifically limited the arbitrator's authority to issues raised within a specific time frame.

█ I find that the arbitrator did not exceed his authority by considering claims raised by Melun in the May 6 document. There was a factual dispute before the arbitrator about whether Strange had provided all of the relevant documents in January. The arbitrator considered the evidence and the arguments of the parties, and found that the adjustments proposed in the May 6 statement were timely. This finding is entitled to great deference. I find that this decision was within the arbitrator's authority.

### B. The Arbitrator's Analysis of the August 31 Statement

█ Strange contends that the arbitrator exceeded his authority and drastically altered the contract rights of the parties in making the Post–Closing Adjustments. I agree.

The Agreement provided a purchase price at 80% of S & C's audited book value as of August 31, 1986. The Agreement gave the purchaser the right to terminate the purchase if its accountant Coopers & Lybrand was not satisfied with the S & C numbers. The arbitrator's role did not relate to the Original Book Value as of August 31, 1986 but related solely to a Post–Closing Adjustment, made to bring the accounts up to date to reflect the company's operations from August 31, 1986 to the Closing Date. In accepting Melun's objections, the arbitrator undertook a far more drastic revision, fundamentally altering S & C's accounts upon which the Original Book Value was based.

Melun had the clear right under the Agreement to reject S & C's audited book value on advice of its accountants. It did not do so. Having closed on the Original Book Value as the basis of the purchase, it was not entitled to any arbitrated adjustment except the contractual Post–Closing Adjustment for "the amount, if any, by which the book value ... increased or decreased from the Original Book Value during the period from September 1, 1986 to the Closing Date." Such adjustment could arise only by reason of events in the period from August 31, 1986 to Closing.

4. Melun submits an affidavit of its accountant at Coopers & Lybrand, which states that during and after January 1987 Coopers "continually" requested that Strange's accountant (Halbe) provide the financial records necessary for a complete review of the November 30 statement. Halbe submits an affidavit in response, which states that no such requests were made during January, and in any event that Coopers representatives were "constantly present" in Halbe's office (and at S & C) while the November 30 statement was being prepared, had available to them all of the materials that formed the basis of that statement, and "regularly took the opportunity to examine these materials."

In contrast, the Post–Closing Adjustment prepared by Coopers & Lybrand on behalf of Melun and eventually accepted in large part by the arbitrator challenged the November 30, 1986, balance sheet not solely on account of events intervening between August 31 and November 30. Many of the challenges and much of the adjustment involved assertions that would also have impugned the August 31 balance sheet. To this extent, the adjustment claimed and awarded was outside the arbitrator's powers and represented a fundamental alteration of the Agreement between the parties.

The arbitrator clearly viewed his task as to determine the true value of S & C's assets as of November 30, and to correct any perceived errors in the accounting methods used in valuing the assets. This was an incorrect interpretation of his authority under the Agreement. The arbitration clause is quite narrow. It does not empower the arbitrator to resolve any and all disputes between the parties, or to determine the "fair" sale price for the company. Rather, it envisions arbitration solely about "the amount, if any, by which the book value of [S & C] increased or decreased during the period from September 1, 1986 to the Closing Date." Agreement ¶ 1(d)(i). While Melun conceivably may have valid claims about the inaccuracy of the August 31 figures and the accounting practices underlying those figures, the arbitration agreement did not cover that dispute.

Strange points out that the adjustment imposed on him by the arbitrator exceeds the amount he received as the purchase price. Under the arbitrator's award, he ends up paying Melun to take over his stock. Melun answers that it took over responsibility for $1,500,000 of S & C's debts. Both observations are really irrelevant. If S & C's operations were so disastrous during the period from August 31, 1986 to the Closing that the decrease in Book Value as of Closing exceeded the original payment (by more than $60,-000), such an adjustment would be payable. Although Strange contends it is illogical, it is not. Under the Agreement he was to receive only 80% of the Original Book Value while the Post–Closing Adjustment was to be for the full amount of the decrease in value

occurring in the closing period, minus a deductible. Thus if the book value of S & C should have declined from a positive balance of over $300,000 as of August 31 to 0 at the Closing Date, Strange would end up paying Melun to take his stock. A fortiori this result would obtain if the events of the closing period drove the company into insolvency, with liabilities exceeding assets. That is the way the Agreement was written. It did expose Strange to the risk that he might have to pay Melun to take his stock. So this aspect of Strange's argument does not demonstrate the merits of his contention.

The merits of his position, however, lie in the fact that the adjustments made were not limited, as the Agreement required, to events occurring subsequent to August 31. Strange's Agreement limited his risk of Post–Closing Adjustment by arbitration to the events between August 31 and Closing.

Melun contends it did not accept the August 31 balance sheet and protests that it had not received sufficient documentation by the time of Closing to appraise the balance sheet and formulate its objections. Strange responds that Melun had full access to the documents and made no requests of his accountants for further documents at the time.

This dispute is irrelevant to the controversy. If Melun's accountants were not satisfied with the August 31 balance sheet at the time of Closing, whether by reason of express disagreement or because of inadequate documentation, Melun was free to terminate the Agreement. It could properly have walked away or proposed a renegotiation. It did neither. It closed after Coopers' review of S & C's balance sheet.

Once it had done so, the Post–Closing Adjustment limited both purchaser and seller to adjustments arising from the events of the Closing Period. That is the sole issue covered by the arbitration agreement.

I do not suggest that Melun is barred from claiming fraud and suing for either damages or rescission on that basis. That is not the issue before the court. The sole issue presented at this time is whether the arbitrator acted within the scope of his authority. I find that in undertaking a fundamental revi-

sion of S & C's accounts, rather than limiting himself to the changes occurring in the closing period, the arbitrator went outside the scope of the powers conferred by the Agreement.

## Conclusion

Petitioner's motion to confirm the arbitral award is denied. Respondent's cross-motion to vacate the award is granted. The action is remanded to the arbitrator to make findings as to increases or decreases in the book value resulting solely from the events of the period from August 31 to closing.[5]

SO ORDERED.

5. Strange asks that the action be remanded to a different arbitrator, arguing that Robert Graham's initial award and his subsequent refusal to modify the award are evidence of bias. The request is denied. The fact that the arbitrator misunderstood the scope of his authority does not suggest that he is biased or that he will fail to render a proper decision after the limited scope of his authority has been clarified.