**COMMERCIAL RISK REINSURANCE COMPANY LIMITED, et al., Petitioners–Cross–Respondents,**

v.

**SECURITY INSURANCE COMPANY OF HARTFORD, Respondent–Cross–Petitioner.**

No. 07 Civ. 2772(VM).

United States District Court, S.D. New York.

Nov. 30, 2007.

Opinion Denying Reconsideration Dec. 12, 2007.

John Patrick Higgins, Edward Michael Roth, D'Amato & Lynch, New York, NY, for Petitioners–Cross–Respondents.

Michele Lynne Jacobson, Regan Shulman, Andrew Lewner, Christian Fletcher, Stroock & Stroock & Lavan, L.L.P., New York, NY, for Security Insurance Company of Hartford.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Petitioners Commercial Risk Reinsurance Company Limited and Commercial Risk Re–Insurance Company (collectively "Commercial Risk") brought this action to vacate an award (the "Award") obtained in an arbitration proceeding by respondent Security Insurance Company of Hartford ("Security"). Security cross-moves to confirm the Award. For the reasons stated below, Security's motion to confirm the Award is granted and Commercial Risk's motion to vacate is denied.

## I. FACTS

In the underlying arbitration, Security sought to recover losses arising from workers compensation programs covered by two reinsurance agreements entered into by the parties in 1999 and 2000. (See Quota Share Reinsurance Contracts dated July 1, 1999 and September 1, 2000 (the "Treaties"), attached as Ex. 4 to Declaration of Michele L. Jacobson in Support of Cross–Petition to confirm Arbitration Award and in Opposition to Petition to Vacate Arbitration Award ("Jacobson Dec."), dated June 7, 2007.) Dennis Insurance Group ("DIG") served as the managing general agent to process Security's policy underwriting business under the Treaties. In those contracts, Commercial Risk agreed to accept a certain share of Security's interests and liabilities associated with the covered workers compensation programs insured by Security. At issue in the arbitration was Commercial Risk's denial of payment of amounts billed by Security under the Treaties. As reason for its refusal to pay, Commercial Risk contended, among other arguments, that a portion of the business Security referred for processing by DIG involved policies not covered by the Treaties.

The Treaties contain a clause under which the parties agree to settle through binding arbitration any dispute relating to the interpretation, performance, formation, or validity of the Treaties or any transaction arising under them. (See Treaties, Art. XXXI at 15–16.) They grant the arbitrators "the power to determine all procedural rules for the holding of the arbitration including but not limited to inspection of documents, examination of witnesses and any other matter relating to the conduct of the arbitration." (Id. at 16) The

arbitration clause also contains an "Honorable Engagement" provision under which the arbitrators are directed to "interpret this Contract as an honorable engagement and not merely as a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law." (*Id.*)

Following a hearing from March 5, 2007 through March 9, 2007, the arbitration panel rendered an interim award which directed Commercial Risk to pay Security $20,754,990, plus interest in an amount of $1,300,000. (*See* Interim Fund Award dated March 11, 2007 (the "Award"), attached as Ex. 31 to Jacobson Dec.) The Award also provided for payment of interest by Commercial Risk at the rate of 10 percent on any balance that remained unpaid after 30 business days from the date of the Award.

## II. *DISCUSSION*

■ Because one of the companies comprising Commercial Risk is a citizen of Bermuda, Security seeks confirmation of the Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201–208, as well as under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16. Under the Convention, which applies to arbitration proceedings held in this country involving at least one party that is not a United States citizen, an arbitration award must be confirmed except where the court finds one of the grounds for refusal of recognition or enforcement specified in the Convention. *See* 9 U.S.C. § 207; *Zeiler v. Deitsch,* 500 F.3d 157, 164 (2d Cir.2007) (noting that "the burden [on the party opposing enforcement of an arbitral award] is a heavy one, as the showing required to avoid summary confirmance is high") (*quoting Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir.2005)); *Yusuf Ahmed Alghanim v. Toys "R" Us,* 126 F.3d 15, 19 (2d Cir.1997) (stating that "[u]nder the Convention, the district court's role in reviewing a foreign arbitral award is strictly limited"). Similarly, pursuant to the FAA, confirmation of arbitral awards is required unless the party seeking to vacate establishes any of the limited exceptions provided by the statute or case law. *See Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 91 (2d Cir.2005) (stating that an "arbitration decision must be confirmed if there is any basis for upholding the decision and '[i]f there is even a barely colorable justification for the outcome reached' ") (citation omitted). However, because the arbitration occurred in the United States, the Award as to the Commercial Risk Bermuda company is also governed by the FAA provisions applicable to domestic arbitration awards. *See Zeiler,* 500 F.3d at 164.

■ The Court finds that the Award satisfies the minimal standards that govern confirmation. Conversely, the Court is not persuaded that Commercial Risk has advanced sufficient grounds to satisfy the rigorous test applicable to justify vacating an arbitral award.

Commercial Risk argues that the Award must be overturned because: (1) the panel rendered an imperfect decision insofar as it issued the Award jointly rather than severally against the two separate Commercial Risk entities that can only be held severally liable; (2) the arbitration proceeding that produced the Award manifested misconduct and was fundamentally unfair to Commercial Risk because the panel excluded the testimony of Commercial Risk's witness and exhibits pertaining to damages; and (3) the panel exceeded its authority by (a) awarding damages based upon 75 policies that Commercial Risk contended were not covered by the pertinent Treaty, and thus not subject to arbitration; (b) considering an exhibit concerning these

policies that Security allegedly improperly concealed from Commercial Risk, thereby misleading the panel and precluding effective cross-examination; (c) disregarding the aggregate limit of liability of $24 million specified in the 2000 Treaty; and (d) awarding post-award interest at a rate of 10 percent.

The Court will address first the issues concerning alleged misconduct in the arbitration proceedings and the scope of the arbitrators' authority. In this regard, the Court finds no evidence that the arbitrators engaged in misconduct, or exceeded their authority, or that Security committed any fraud sufficient to vacate the Award.

■ In connection with Commercial Risk's objection pertaining to the exclusion of its witness and documents concerning damages, the Court's inquiry must be guided as a threshold matter by the strict rules that apply to limit judicial discretion to vacate arbitral awards. Arbitrators generally are not bound by the rules of evidence, but possess broad latitude to determine the procedures governing their proceedings, to hear or not hear additional evidence, to decide what evidence is relevant, material or cumulative, and otherwise to restrict the scope of evidentiary submissions. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997) ("Judicial review of arbitration awards is necessarily narrowly limited.... Undue judicial intervention would inevitably judicialize the arbitration process.") (internal citations omitted); *Fairchild Corp. v. Alcoa, Inc.*, 510 F.Supp.2d 280, 286 (S.D.N.Y. 2007) (noting that "arbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings") (*citing Areca, Inc. v. Oppenheimer & Co., Inc.* 960 F.Supp. 52, 55 (S.D.N.Y.1997)).

Here, the Treaties specifically conferred on the arbitrators the power to determine all procedural rules governing the conduct of the arbitration, specifically including inspection of documents, examination of witnesses, and any other matter relating to the conduct of the arbitration. (*See* Treaties, Art. XXXI at 16.) Further extending the broad latitude accorded to the panel, the Treaties also provided that the arbitrators were "relieved of all judicial formalities and may abstain from following the strict rules of law." (*Id.*)

The transcript of the arbitration hearing and other evidence on the record document the dispute between the parties about the testimony and exhibits pertaining to damages that Commercial Risk contends the panel improperly excluded when it denied Commercial Risk's proffer of its Chief Financial Officer, Jeffrey Passis ("Passis"), as well as the exhibits about which Passis was to testify. (*See* Transcript of the Arbitration Hearing ("Tr. Hrg."), attached as Exs. A–E of Appendix of Transcripts to Jacobson Dec., at 995–1034.) On this matter, Security objected to Commercial Risk's delay in proffering Passis as a witness without giving sufficient notice and after the close of discovery, and producing the documents at issue only two days before commencement of the arbitration hearing, thus precluding an effective opportunity to take Passis's deposition. The panel heard extensive argument concerning the timeliness of the witness and the documents, which presumably implicated the potential for delay in the proceedings; the possibility of prejudice to Security; the pertinence, materiality, and import of the evidence in question; whether Security had received sufficient notice of the evidence and opportunity to depose Passis; and whether the witness list at that point in the proceedings was still preliminary. (*See id.*) In accordance with the expansive procedural mandate conferred on the arbitrators, having considered the parties' arguments, the panel

unanimously decided to exclude Commercial Risk's proffered damages evidence. In doing so, explaining its reason, the panel stated on the record that Commercial Risk's witness "was not on the witness list." *Id.* at 1033. Noting Commercial Risk's further objection as to whether there was any suggestion that the witness list was anything other than preliminary, the panel responded: "[W]e take it for what it is . . ." *Id.* at 1034.

Thus, the panel essentially made a factual finding in respect of an evidentiary ruling. To this extent, the panel satisfied the minimal standard governing its authority. The arbitrators allowed the parties an opportunity to address the issue, heard their arguments and "explain[ed] their conclusions in terms that offer even a barely colorable justification for the outcome reached." *Matter of Andros Compania Maritima, S.A.(Marc Rich & Co., A.G.),* 579 F.2d 691, 704 (2d Cir.1978); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 214 (2d Cir.2002) ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge . . . ."); *Bisnoff v. King,* 154 F.Supp.2d 630, 637 (S.D.N.Y.2001) ("So long as an arbitrator's procedural decision is reasonable and fair, it should not be disturbed.").

Here, the Court finds no justification for going behind the arbitrators' interpretation and application of their procedural mandate so as to reexamine whether or not the panel's conclusion that Commercial Risk's witness was not on the witness list, and the exclusion of his testimony and related exhibits on that ground, were warranted. Such a course would constitute an open invitation for courts either to second guess arbitrators' reading and application of the scope of their procedural rules, or to compel them, against the explicit mandate of applicable arbitration doctrine, to articulate detailed explanations for any disputed procedural ruling. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (declaring that arbitrators are not required to provide an explanation for their decisions); *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir.2004).

In pressing for a contrary result, Commercial Risk's reliance on *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16 (2d Cir. 1997), is misplaced. In that case the issue was whether the arbitration panel properly excluded as cumulative the testimony of a witness who was temporarily unavailable, but who was the only person who could have testified with respect to the substance of one of the claims in contention. The arbitrators' decision to proceed without the proffered testimony thus amounted to a substantive ruling regarding the extent of the evidence already on the record. In vacating the confirmation of the award, the Second Circuit noted that the panel did not indicate in what respects the witness's testimony would have been cumulative. Indeed, because there was no other witness competent to address the substantive core of the claim, the Circuit Court found that "there was no reasonable basis for the arbitrators to conclude that [the witnesses's] testimony would have been cumulative with respect to those issues." *Id.* at 21. Significantly, perhaps in recognition of the general rule that arbitrators' evidentiary rulings are entitled to a high degree of deference, the Circuit Court prefaced its conclusion with the qualifying phrase "[o]n the facts of this case . . . ." *Id.*

On the facts of the case now before this Court, the panel's exclusion of the testimony of Passis was preceded by a procedural ruling, after a full hearing and deliberation on the issue, that Passis did not appear on the witness list, and presumably that the subsequent proffer of his testimony did not provide Security with adequate notice and

was untimely. In its considerations, the panel apparently credited the arguments advanced by Security concerning the application of the governing procedures, and plausibly decided that allowing the evidence at that point would have prejudiced Security and permitted Commercial Risk not to comply with the applicable rules governing the arbitration proceeding.

 It is true, as Commercial Risk emphasizes, that arbitrators " 'must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.' " *Id.* at 20 (*quoting Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985)). However, it is also the case, as the *Tempo Shain* Court itself acknowledged, that arbitrators "[are] not required to hear all the evidence proffered by a party ...." *Id.* The time frames that arbitrators allow under approved schedules for discovery and pre-hearing submissions, deadlines binding on all parties, ordinarily are sufficient to provide them with adequate opportunity to present evidence and arguments. There is no categorical rule, as Commercial Risk's argument would hold, requiring arbitrators to consider evidence even if it is proffered after a specified cutoff established under the rules applicable to the arbitration, and against a factual findings by the arbitrators to this effect. Even judicial proceedings, which are governed by far more rigorous procedural standards, do not compel such a result. *See Patterson v. Balsamico*, 440 F.3d 104, 116–118 (2d Cir.2006) (holding that the District Court did not abuse its discretion in precluding four witnesses announced ten days before trial, when the schedule required disclosure thirty days prior to trial); *Wolak v. Spucci*, 217 F.3d 157 (2d Cir.2000) (holding that the District Court did not abuse its discretion in precluding testimony of an expert witness announced after the deadline for disclosure of experts had passed); *Softel, Inc. v.*

*Dragon Med. and Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997) Accordingly, if the arbitrators make a factual and procedural determination that under their governing rules proffered evidence is untimely or not included in approved discovery schedules, absent evidence of misconduct that determination is beyond judicial review. *See Matter of Arbitration Between Melun Indus., Inc. and Strange*, 898 F.Supp. 990, 993 (S.D.N.Y.1990) (arbitrator's finding that a party's submission was timely is a "factual dispute" entitled to "great deference" by the District Court).

Here, the panel's judgments in this regard fall well within the discretion generally accorded to arbitrators, as well as within the deference due to their rulings on such procedural matters. The panel's conclusion is all the more justifiable in a case such as this—a consideration not evident in *Tempo Shain*—where the parties' arbitration agreement conferred upon the arbitrators the widest possible discretion to determine *all* procedural rules, "relieved [them] of all judicial formalities" and authorized them to "abstain from following the strict rules of law." (Treaties, Art. XXXI at 16.) On a final note on this point, the Court notes that, to minimize any prejudice to Commercial Risk, the panel offered additional opportunity for Commercial Risk to cross-examine Security's witness on the pertinent documents and claims the panel had accepted.

In this context, Commercial Risk's protestations about the status of the witness list and the timing of their proffer of Passis as a witness runs counter to the expansive delegation of decisional authority with which the parties, through their explicit agreement, entrusted the arbitrators. Thus, Commercial Risk's argument reflects an instance of the phenomenon noted by this Court in which parties agree to arbitrate and confer upon arbitrators max-

imum decisional authority so as to liberate them from rigid judicial formalities and application of strict rules of law, and then fault them if they do exercise their latitude to stray from those presumably discarded procedural or substantive constraints. *See Fairchild,* 510 F.Supp.2d at 297 ("If parties are not prepared to abide by the acknowledged limitations of the rules of arbitration ..., why enter into arbitration agreements in the first place, rather than accepting to be bound by arbitral awards, and then challenging an unfavorable decision on the ground that the process was flawed insofar as it lacked all of the expanded and more rigorous legal protections associated with judicial proceedings?").

## B. *IMPERFECT AWARD*

■ Commercial Risk objects to the Award as being deficient and opposes confirmation because it directs the two respondent entities to pay Security $20,754,990, plus interest, without allocating the damages between them as required by the Treaties. Commercial Risk argues that the two companies are separate, and that under the Treaties the liabilities of the reinsurer cannot be changed from several to joint. The Treaties provide that Commercial Risk (Bermuda) agreed to accept a quota share of liabilities of 85.5 percent and Commercial Risk (Vermont) 9.5 percent. (*See* Treaties at 25–26.) This provision offers at least an initial point of reference for determining an appropriate allocation of the Award as between the two

entities.[1] Commercial Risk argues, however, that the liability of each company is not solely a function of its quota share participation, but must take into account each company's current cash position in relation to Security, and that this calculation cannot be made without the evidence the panel excluded evidence.

The Court finds this argument insufficient ground to support vacating the Award. There seems to be no dispute that the parties intended that liability for any award would be imposed upon the Commercial Risk companies severally, not jointly, and at least in part based on the application of the formula determining their respective share of liabilities under the Treaties. To the extent the Award may reflect a deficiency not touching the merits to the controversy regarding liability, the Court has authority to correct it so as to "effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. Accordingly, the Court will condition confirmation of the Award on a stipulation by the parties' to a breakdown of the Award as between Commercial Risk (Bermuda) and Commercial Risk (Vermont) in accordance with a mutually acceptable formula, or based on some other agreed upon method for resolving this issue. Failing that course, the Court will entertain further proceedings to determine an appropriate approach to resolve this matter.

1. The Court notes that in a related case between these parties involving another arbitration, the panel initially rendered an award against Commercial Risk that similarly did not allocate liability as between the two companies. The panel subsequently amended the award, in accordance with a proposal and supporting material provided by Security, to break down the liability between the entities on the basis of a formula of 90 percent for the Bermuda company and 10 percent for the Vermont company. The final Order endorsed by the Court upon the parties' joint submission divided participation in the liability for the Award as between the two companies in amounts approximating their shares under the Treaties, without some adjustments the parties apparently agreed upon. *See* Amended Order, dated November 19, 2007, *Commercial Risk Re–Insurance Company Ltd. v. Security Ins. Co. of Hartford,* No. 07 Civ. 7191 (S.D.N.Y.2007).

## C. *EXCEEDING AUTHORITY*

Commercial Risk asserts that the Award must be vacated because of various instances in which the panel allegedly exceeded its authority. These grounds pertain primarily to whether the panel awarded damages that were based on policies that Commercial Risk contends were not covered by the 2000 Treaty, and that exceeded the applicable limit of liability under that Treaty. Thus, Commercial Risk argues that the arbitrators either ruled on matters outside the scope of the arbitration clause, or essentially rewrote the contract at issue.

■ Challenges to arbitration awards on the ground that the arbitrators exceeded their powers are subject to the same rigorous test that governs allegations of arbitration misconduct. *See Westerbeke*, 304 F.3d at 220 (noting that the Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Acts authorization to vacate awards pursuant to § 10(a)(4)"). Under the broad deference due arbitrators' rulings pursuant to this strict measure, to the extent Commercial Risk's challenge rests on the panel's alleged misinterpretation or misapplication of the Treaties, its motion to vacate must fail. The interpretation of contractual terms by arbitrators is not subject to judicial challenge, even when the award may be grounded on an erroneous construction of the parties' agreement. *See id.* at 213–14. The record indicates that the parties exhaustively presented to the arbitrators their respective positions concerning the issues of coverage under the Treaties for the 75 policies at issue and of the limit of liability. (*See* Tr. Hrg. at 1306–1312; 1354–1359.) These exchanges make clear that the parties' underlying dispute on these points fundamentally implicated disagreements about how the pertinent contract provisions should be construed.[2] The panel's Award in essence reflects Security's argument and rejects Commercial Risks. That Commercial Risk disagrees with the panel's application of the Treaties in this respect is not sufficient ground to vacate the Award. The Second Circuit has underscored that it "has not been receptive at least in recent years to invitations to second-guess an arbitrator's resolution of a contract dispute." *Matter of Andros*, 579 F.2d at 703 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns

---

2. For example, at one point, Security, describing the disagreement, stated:

> Now, Commercial Risk claims that this document limits its liability for the second year of the DIG program to $22.8 million. The problem with Commercial Risk's argument, however, is that if we look at the actual endorsement, that's not what it says .... Let's look at that document together. It says, first off ... "The reinsurers and the company hereby agree to the following." Who agreed to this endorsement? Commercial Risk and Security Insurance Company of Hartford. And if we turn to the signature page, that's what we see....
> Let's continue. Point 1, "The reinsurance contract is canceled effective as of March 1, 2001, hereinafter referred to as the 'cancellation date.'" So the parties agreed to cancel the treaty effective March 1, 2001.

> Point 2, "The reinsurer shall only indemnify the company with respect to 'agreed covered policies.'" And if we continue, the endorsement tells us specifically which policies are agreed covered policies. First, policies "that were written up to the cancellation date," that's March 1st, 2001, and policies "that were written after the cancellation date pursuant to a special agreement between the reinsurers and the reinsured and which specifically are set forth as additional covered policies in Attachment A." Now, if we continue, we see that the final point of paragraph 2 says that for all of the policies identified in (I) and (ii), the total amount of gross written premium cannot exceed 30 million.

Tr. Hrg. at 1306–7.

construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his") (*quoting United Steelworkers,* 363 U.S. at 599, 80 S.Ct. 1358).

■ With regard to post-award interest, the Court finds that the arbitrators did not exceed their authority by awarding interest at 10 percent where the Treaties specifically provided that they may award interest, without qualifying the type or fixing a cap at any particular rate. *See Hunt v. Commodity Haulage Corp.,* 647 F.Supp. 797, 798 (E.D.N.Y.1986).

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 7) of petitioners Commercial Risk Reinsurance Company Limited and Commercial Risk Re–Insurance Company (collectively "Commercial Risk") to vacate the Interim Fund Award dated March 11, 2007 (the "Award") rendered in favor of respondent Security Insurance Company of Hartford ("Security") in an arbitration proceeding between the parties is DENIED; and it if further

**ORDERED** that the cross-motion of Security to confirm the Award is GRANTED with costs in an amount to be determined upon submission of documentation, subject to an agreement between the parties in respect of the allocation of the amount of the Award as between the two companies comprising Commercial Risk; and it is finally

**ORDERED** that in the event the parties are unable within ten calendar days from the date of this Order to reach agreement as to the allocation of damages as provided for above, the Court shall schedule further proceedings to address resolution of this issue.

**SO ORDERED.**

## *DECISION AND ORDER*

### I. *BACKGROUND*

By Decision and Order dated November 30, 2007 (the "Order"), the Court denied the motion of petitioners Commercial Risk Reinsurance Company Limited and Commercial Risk Re–Insurance Company (collectively "Commercial Risk") to vacate an arbitration award (the "Award") in favor of respondent Security Insurance Company of Hartford ("Security") and granted Security's cross-motion to confirm the Award. The Court determined that Commercial Risk failed to establish sufficient grounds for the charges of misconduct on the part of the arbitrators that Commercial asserted, or any other compelling reason to warrant vacating the award. Commercial now moves for an order pursuant to Local Civil Rule 6.3 granting reconsideration.

### II. *STANDARD OF REVIEW*

■ Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litg.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (citations and quotation omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y. 1990). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (*quoting* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 at 790). To these ends, a request for reconsideration under Local Rule 6.3 must demonstrate

controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

Local Rule 6.3 is intended to " 'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.' " *S.E.C. v. Ashbury Capital Partners,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (*quoting Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the Rule from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment. *See Montanile v. Nat'l Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002); *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999).

### III. *DISCUSSION*

■ Commercial Risk urges reconsideration on the basis of essentially the same arguments that it raised in its original motion to vacate the Award. Specifically, Commercial Risk claims that the panel improperly excluded the testimony and related documents of a witness proffered by Commercial Risk to address issues pertaining to damages. Upon review of Commercial Risk's motion, the Court finds no controlling law or factual matters it overlooked that might reasonably be expected to alter the outcome of the Order. Indeed, the Court thoroughly reviewed the parties' extensive dispute before the arbitrators concerning the exclusion of the evidence in question. The Court determined that the panel made a factual and procedural ruling, after hearing exhaustive arguments from both sides, to exclude the testimony and documents. The panel considered Security's objection to the untimely introduction of the evidence and potential prejudice from its lack of sufficient notice and opportunity to depose the witness. It also considered the effect on Commercial Risk and sought to minimize prejudice by affording additional opportunity for cross-examination. These were all permissible rulings within the exceptionally broad delegation of authority the parties' agreement accorded to the panel, which included an "Honorable Engagement" clause relieving the arbitrators of all judicial formalities and of following strict rules of law. The Court concluded that it would not go behind the panel's decision in this regard, and explained why such a course was unwarranted. Nothing Commercial Risk advances in the instant motion compels otherwise.

Because Commercial has failed to identify any controlling law or factual matters put to the Court on the underlying motion that might reasonably be expected to alter the conclusion reached by the Court, Commercial Risk's motion for reconsideration is DENIED.

### IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that motion of petitioners Commercial Risk Reinsurance Company Limited and Commercial Risk Re–Insurance Company for reconsideration (Docket No. 18) of the Court's Decision and Order dated November 30, 2007, is DENIED.

**SO ORDERED.**