**FLOYD COUNTY BOARD OF EDUCATION, Plaintiff,**

v.

**EUA COGENEX CORPORATION, Defendant.**

No. Civ.A. 98–257.

United States District Court,
E.D. Kentucky.

Sept. 1, 1998.

Michael J. Schmitt, Wells, Porter, Schmitt & Jones, Paintsville, KY, for Plaintiff.

Jeffrey J. Kuebler, William C. Rambicure, Brian W. Robinson, Rambicure, Miller & Kuebler, PSC, Lexington, KY, Christopher W. Parker, McDermott, Will & Emery, Boston, MA, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The defendant, EUA Cogenex Corporation ("Cogenex"), has moved the Court for confirmation of an arbitration award and to dismiss the plaintiff's application to vacate the arbitration award [Record Nos. 2 & 3]. The plaintiff, Floyd County Board of Education ["the Board"], has responded [Record Nos. 12 & 20], to which Cogenex has replied [Record No. 16]. These matters are now ripe for decision.

### I. FACTUAL BACKGROUND

This action involves an arbitration award rendered in connection with a contract dispute between Cogenex and the Board. Cogenex is a corporation that provides energy management services to its clients. The underlying dispute relates to an energy services agreement between Cogenex and the Board dated August 12, 1992. The terms of the agreement provided that Cogenex would install a computerized energy management system in exchange for $663,000. The contract price was to be paid from the energy savings that the system provided to the Board.

Although the system was completed as of February 28, 1994, the Board has only paid a small portion of the contract price. After attempting to settle the dispute, Cogenex filed a demand for arbitration with the Boston office of the American Arbitration Association ("AAA"). Cogenex immediately served a copy of the arbitration demand on the Board. The Board was supposed to respond to the demand before August 11, 1997, but failed to do so.

On August 15, 1997, AAA provided both sides with a list of prospective arbitrators for the dispute. Cogenex provided AAA with its preferences as required by the rules, but the Board, once again, failed to respond. An

arbitrator was eventually selected without any input from the Board.

On September 16, 1997, the arbitrator convened a preliminary hearing, and counsel for both sides participated. The Board was represented by attorney Jerry Patton, and Cogenex was represented by attorney Christopher Parker. Although the arbitrator ordered both sides to submit a joint statement of stipulated facts before October 10, 1997, only Cogenex complied.

The Board did file a motion to dismiss the arbitration on October 10, but it was denied. After Denying the Board's motion to dismiss, the arbitrator convened a second preliminary conference on October 20, 1997, to finalize the discovery schedule. During this conference, the arbitrator ordered the parties to complete document discovery by November 7, 1997, and the deposition of the only witness, Jerry McGarey, before November 18, 1997.[1] Hearings on the merits would be commenced on December 9, 1997.

On December 5, 1997, with the Board in complete disarray, counsel for the Board wrote the following urgent letter to AAA:

The Floyd County Board of Education has good cause to postpone the hearing. The undersigned Counsel works for the Floyd County Board of Education, which is a body politic under the laws of the state of Kentucky. This body can not act in any capacity officially without a quorum. The Board presently only has two members. This is due to the resignation of three of the five members. Kentucky State Law provides that two members can not act at this time and the Commissioner of the Kentucky Department of Education has promised that he will appoint a third board member somewhere around December 15th. I have confirmation of all of this, in writing, from the state agency, which is the Kentucky Department of Education in Frankfort, which controls to an extent. Furthermore, any expenditures of any

money have to be approved by the Kentucky Department of Education.... In other words, I'm representing a public body, which can not act at this time and if they could act, they would have to seek the approval of the "overseer" agency in our state capitol and I simply can not obtain the necessary approval in order to attend the arbitration hearing; therefore, I have very good grounds for asking for this continuance.... To conduct the hearing without the presence of the Floyd County Board of Education, myself and my witness, would be a denial of my client's right to due process of law and would be a tremendous injustice....

*See* Record No. 12, I–1. The arbitrator, however, denied the Board's request for a postponement.

On December 15, 1997, following the conclusion of the one-sided hearings, the arbitrator gave both parties an opportunity to submit briefs that summarizes their positions on the evidence in the case; both sides were given until January 5, 1998, to submit their briefs. The Board, however, was still in disarray and was unable to approve expenditures to pay for the brief. Thus, on January 5, 1998, attorney Patton wrote AAA and requested an additional twenty days to file its brief, but its request was denied.

On January 13, 1998, the arbitrator notified the parties that the proceedings were closed. On February 12, 1998, the arbitrator issued an award in excess of $600,000 in favor of Cogenex.

## II. CONCLUSIONS OF LAW

The primary issue before the Court is whether the arbitrator's award should be vacated. Both sides cite the case of *Center Stage Marketing, Inc. v. Filmco, Inc.*, 875 F.2d 862, 1989 WL 40156 (6th Cir.1989), for the applicable standard.[2] In addressing this issue, the *Center Stage* court held the following:

published case law under this section, the Court agrees with the parties that 9 U.S.C. § 10(a)(3) of the Federal Arbitration Act governs this case; section 10(a)(3) and KRS 417.160(1)(d) mirror each other.

---

1. At his deposition, the Board served its second motion to dismiss, but it was also denied.

2. It should be noted that the Board has moved to vacate the arbitrator's award under KRS 417.160(1)(d). However, because there is no

Under the Federal Arbitration Act, a federal court may not set aside an arbitrator's award unless the error committed by the arbitrator, if any, falls within the express terms of 9 U.S.C. § 10. In addition, the arbitrator's error must have so affected the rights of the complaining party as to deprive that party of a fundamentally fair hearing.... [A] federal court may vacate an arbitration award "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown *or in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced*." As the above-emphasized language makes clear, an award may not be set aside under section 10(c) merely because the arbitrator made a mistake. Rather, the arbitrator's conduct must constitute serious error or intentional wrongdoing before an award may be vacated under this provision.

*Id.* at *2–3 (internal citations omitted).

The case of *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir.1997), applies the standard laid out in *Center Stage*. *Tempo* dealt with a contract dispute between Tempo and Bertek over the purchase of a licensing agreement. Bertek intended to call Wayne Pollock as a witness in order to provide what it considered to be crucial testimony concerning the negotiations. However, when Pollock's wife was diagnosed with cancer, Bertek requested that the arbitration panel keep the record open until he could testify. The arbitrators decided to deny Bertek's request and close the record. Bertek appealed from the award in favor of Tempo, and the question on appeal was "whether the arbitration panel committed misconduct in refusing to hear evidence pertinent or material to the controversy." *Id.* 120 F.3d at 20. The Second Circuit found that the panel's refusal to hold the record open until Pollock could testify amounted to fundamental unfairness and vacated the arbitration award. *Id.* 120 F.3d at 21.

In the case at bar, it is undisputed that the Board was in a state of disarray during the time which the arbitration proceedings were being conducted. Within a month before the hearing date was set, the Superintendent and two of the five board members had already resigned as a result of charges of misconduct, malfeasance, and neglect of duty brought against them by the Commissioner of Education Wilmer Cody. Two weeks after the hearing date was set, a third board member resigned, reducing the Board to two members. With only two active board members and being a deficit school district, no one on the Board had authority to incur any debts or make any expenditures for purposes of the arbitration without the prior written approval of Commissioner Wilmer Cody. Such approval was never obtained.

Because of the chaos surrounding the functioning of the Board, the Court finds that the arbitrator's decision to deny the Board's continuance was fundamentally unfair and amounted to misconduct. Additionally, the circumstances at bar are worse than the ones in *Tempo*. In *Tempo*, the Second Circuit vacated the arbitration award because Bertek was denied an opportunity to put on a witness. In the case at bar, the arbitrator's refusal to grant the Board's request for a postponement prevented it from putting on its entire defense.

Cogenex attempts to distinguish *Tempo* from the case at bar by pointing out that Bertek participated in the hearings, whereas the Board did not. Cogenex, however, concedes that the Board actively participated in the arbitration. *See* Record No. 4, p. 8. Furthermore, the Board would have participated in the hearings if the arbitrator had of granted its request for a continuance.

Furthermore, before an arbitrator enters in what amounts to a default judgment against a school board, he should give it every opportunity to present a defense because it is the taxpayers who are the ultimate losers if the Board has to pay. This, however, was not the case at bar.[3]

---

**3.** Although the Court understands that the arbitrator gave the Board several opportunities to participate in the hearings, the Board could not take advantage of them because it was in disarray. When the Board told the arbitrator about the *quorum problem and offered to give him*

Notwithstanding Cogenex's assertions to the contrary, the case at hand is a perfect example of extraordinary circumstances that justify vacating the arbitration award. When the Superintendent and three board members resigned as a result of charges of neglect and misconduct, the Board was unable to represent its constituents, the taxpayers of Floyd County. Hence, the Kentucky Department of Education was forced to take over the management of the Board. This type of turmoil is precisely why arbitration awards may be set aside in special cases.

Because the Board did not have a quorum, it could not, under Kentucky law, approve the necessary expenditures to provide for its defense. In fact, the Board could not even pay the court reporter to transcribe the deposition of its own witness, Jerry McGarey.[4] Based on the above circumstances, the arbitrator should have postponed the proceedings until the Board had a quorum, and the chaos had subsided.[5] Accordingly,

**IT IS ORDERED:**

(1) That the defendant's motions for confirmation of the arbitration award and to dismiss the plaintiff's motion to vacate [Record Nos. 2 & 3] be, and the same hereby are, **DENIED;**

(2) That the plaintiff's application to vacate the arbitration award [Record No. 1] be, and the same hereby is, **GRANTED,** and the arbitration award be, and the same hereby is, **VACATED.**

---

documentation, he should have granted the postponement and accepted the documentation. Upon reviewing the documentation, he would have been able to better understand the Board's dilemma.

**4.** Jerry McGarey was willing to testify that the system installed by Cogenex's predecessor never worked properly, and Cogenex did not attempt to repair it.

**5.** The arbitrator never explained why he was in such a rush to issue a ruling, or how waiting a little longer would have unfairly prejudiced Cogenex. It should also be pointed out that the Board had filed numerous exhibits, and the arbitrator was aware that the Board was planning to assert defenses to Cogenex's claims. Lastly, the Board offered to provide the arbitrator with documentation supporting its claim that it could not take any action until it had a quorum.