13-2180-cv
TiVo Inc. v. Goldwasser

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of March, two thousand fourteen.

PRESENT: REENA RAGGI,
 DENNY CHIN,
 SUSAN L. CARNEY,
  *Circuit Judges.*

-----------------------------------------------------------------------
TIVO INC.,

  *Plaintiff-Appellant,*


  v.                                                    No. 13-2180-cv

DOROTHY GOLDWASSER, ROMI JONES (NEE GOLDWASSER), GOOD INVENTIONS, L.L.C.,
  *Defendants-Appellees.*[*]
-----------------------------------------------------------------------
APPEARING FOR APPELLANT:  LARRY L. SHATZER, III (Shaun R. Snader, Wilson Sonsini Goodrich & Rosati, P.C., Washington, D.C.; Michael B. Levin, Wilson, Sonsini, Goodrich & Rosati, P.C., Palo Alto, California, *on the brief*), Wilson, Sonsini, Goodrich & Rosati, P.C., Washington, D.C.

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

1

APPEARING FOR APPELLEES:     TOBEY B. MARZOUK (Thomas M. Parry, Marzouk & Parry, PLLC, Washington, D.C.; Gary Hoppe, Kantor, Davidoff, Wolfe, Mandelker, Twomey & Gallantry, P.C., New York, New York, *on the brief*), Marzouk & Parry, PLLC, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on May 3, 2013, is AFFIRMED.

On August 22, 2012, an arbitration panel awarded royalties to defendants Dorothy Goldwasser, Romi Jones (née Goldwasser), and Good Inventions, LLC (the "Goldwassers") pursuant to a patent license agreement ("PLA") they had with plaintiff TiVo Inc. ("TiVo"). TiVo now appeals from a judgment denying its motion to vacate the award, granting the Goldwassers' motion to confirm the award, and entering judgment in the Goldwassers' favor. In reviewing a decision to confirm or vacate an arbitration award, we examine the district court's legal rulings de novo and its findings of fact for clear error. See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013). We assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.

2

1.      Standard of Review for Arbitration Decisions

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."   D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).   The district court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).   "In addition, as judicial gloss on these specific grounds for vacatur of arbitration awards, we have held that the court may set aside an arbitration award if it was rendered in manifest disregard of the law."   Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks, citation, and alteration omitted).

Vacating an award for manifest disregard of the law requires a showing that "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and that "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it."   Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 n.1 (2d Cir. 2011) (internal quotation marks omitted); see Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir. 2002)

3

(stating that vacatur requires "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law" (internal quotation marks omitted)). An arbitrator's award may also be vacated if it is "in manifest disregard of the terms of the parties' relevant agreement." Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d at 452 (internal quotation marks and alteration omitted). In such cases, "interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation"; rather, "[i]f the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Id. (internal quotation marks and alterations omitted).

2.      Manifest Disregard of the Law

        a.      Functional Equivalence

TiVo argues that the arbitration panel manifestly disregarded the law by conflating patent licenses and patent infringement actions—mutually exclusive concepts—in interpreting the PLA. The Goldwassers respond that the concepts are not as unrelated as TiVo asserts; infringement damages are frequently calculated based on an estimated reasonable royalty that the infringer would have paid under a licensing agreement. See Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 450 (2d Cir. 1998). In fact, the question before us is not whether these are separate legal concepts—the arbitration panel does not say otherwise—but whether the arbitration panel provided at least a "barely colorable" justification for concluding that the Goldwassers' right to royalties, as that term is used in the PLA, includes a right to a portion of a settlement for past infringement.

4

In urging error, TiVo cites <u>Wang Laboratories, Inc. v. Oki Electric Industries Co.</u>, 15 F. Supp. 2d 166 (D. Mass. 1998), in which the district court held that a lump sum payment to the licensor to cover past infringement did not amount to a royalty payment triggering the most favored licensee clause in the parties' agreement. <u>See</u> <u>id.</u> at 171 (stating that "[m]onies received as a settlement for past tortious use of patents are not the equivalent of royalties"). This conclusion, however, was premised in part on "the language of the contract," which is, of course, unique to every case, and the fact that "[t]he word royalty commonly imports payment for permissive or lawful use and not damages for pirated or illegal appropriation." <u>Id.</u> (internal quotations marks and ellipsis omitted). But, in a contract, the word "royalty" need not always be read so strictly, especially where, as here, the agreement expressly recognizes that royalties may sometimes result from litigation. <u>See</u> PLA Attachment One, J.A. 83 (stating parties' "intention" for royalties provision to be "interpreted in a manner that causes TiVo . . . to pay Royalties at [a specified rate] once, whether from license revenue or <u>litigation recovery</u>" (emphasis added)). Furthermore, even to the extent they provide persuasive language, none of the cases TiVo cites are "well defined, explicit, and clearly applicable." <u>Jock v. Sterling Jewelers Inc.</u>, 646 F.3d at 121 n.1; <u>see, e.g.</u>, <u>Information Res., Inc. v. Test Mktg. Grp., Inc.</u>, 22 F.3d 1102 (Fed. Cir. 1993) ("Although couched in terms of a 'reasonable royalty,' damages awarded . . . are designed to compensate a patentee for infringement of his patent rights, and are not royalty payments at all.") (unpublished table decision). Rather, they

address different contracts in different circumstances and reach conclusions that are not precedential.

Thus, the arbitration panel's interpretation of the royalties provision in the PLA as including certain litigation damages did not manifestly disregard patent law and is at least a "barely colorable" interpretation of the PLA. Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d at 452.

b.    Consistency with Express Provisions of PLA

We similarly reject TiVo's argument that the arbitration panel manifestly disregarded New York law by implying obligations through the duty of good faith and fair dealing that are inconsistent with the PLA's litigation settlement and survival provisions.[1] See Havell Capital Enhanced Mun. Income Fund, L.P. v. Citibank, N.A., 84 A.D.2d 588, 589, 923 N.Y.S.2d 479, 481 (1st Dep't 2011) (stating that "duty of good faith cannot imply obligations inconsistent with the express terms" of agreement).

The litigation settlement provision states that, during the term of the PLA, "TiVo will pay the Goldwassers an amount equal to forty percent (40%) of any Net Litigation Recovery . . . directly attributable to the enforcement of the [Goldwasser patent]." PLA Attachment One, J.A. 84. TiVo urges that this payment is the exclusive means by which the Goldwassers may recover proceeds from litigation settlements, and that no such payment is due here because the litigation did not involve the Goldwasser patent. But

---

[1] TiVo contends that the arbitration panel also erred by engaging in "gap filling" analysis contrary to New York law. Because we do not read the arbitration panel to have applied such analysis, this argument warrants no discussion.

6

TiVo fails to cite—and we independently do not find—any indication in PLA language that, under any colorable interpretation, this method of recovery is the exclusive means by which the Goldwassers may share in the proceeds of TiVo's litigation. Indeed, the provision cited by the arbitration panel stating that royalties must be paid, "whether from license revenue or litigation recovery," arguably contradicts TiVo's position and, thereby, provides sufficient support for the panel's interpretation.

The arbitration panel likewise did not manifestly disregard New York law in concluding that expiration and survival provisions of the PLA did not preclude recovery. The survival provision states that payment obligations survive only to the extent they "ar[ose] prior to termination," PLA § 9.3, J.A. 79, and it is undisputed that the EchoStar settlement occurred after the PLA terminated. The arbitration panel, however, concluded that the payment obligation at issue here arose not with execution of the settlement, "but when [EchoStar] manufactured TV DVRs using DVR Functionality during the term of the PLA." J.A. 418. TiVo labels this a logical absurdity because it obligated TiVo to pay royalties before TiVo obtained a judgment against, or settled with, EchoStar. The arbitration panel's decision, however, is consistent with its construction of the settlement as the functional equivalent of an implied license, necessitating a royalty payment because the revenue payment provision imposes a payment obligation at the time that third party DVRs with DVR functionality licensed from TiVo are manufactured. Moreover, insofar as the panel found that the parties contracted for the Goldwassers to receive benefits from litigation whose functional purpose was to obtain compensation for units produced using

7

TiVo's technology without a license, this intent would be undermined by an alternative interpretation. Thus, the construction of EchoStar's settlement payment as the functional equivalent of revenue subject to a royalty payment obligation is consistent with a determination that the payment obligation arose at the time of manufacture. We therefore conclude that, although the panel's interpretation allows for a temporal oddity, it is a colorable interpretation of the PLA and not contrary to law.

      c.      <u>Commercially Absurd Result</u>

Separately, TiVo maintains that the arbitration panel's decision is contrary to law because it arrives at a commercially absurd result. <u>See</u> <u>In re Lipper Holdings, LLC</u>, 1 A.D.3d 170, 171, 766 N.Y.S.2d 561, 561 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd."). According to TiVo, the EchoStar litigation involved EchoStar's infringement on TiVo's patent, not the Goldwassers' patent, and, because the PLA expired by the time of settlement, the Goldwassers may now sue EchoStar for infringement on their patent. It would be commercially absurd, therefore, to require TiVo to pay part of its litigation settlement to the Goldwassers. We disagree.

The arbitration panel found that TiVo attempted to license its technology to EchoStar, and the parties do not contest that, if such a licensing agreement had been reached, the Goldwassers would have been entitled to royalties for each unit EchoStar manufactured. Further, the Goldwassers' ability to recover royalties from a suit that did not explicitly involve their patent but, as the arbitration panel found, in function substituted for the failure to obtain a license, must be considered in light of the parties' intent to forge

8

a "win-win" partnership and the Goldwassers' choice to rely on TiVo's good faith rather than to protect themselves through guaranteed minimum payments, guaranteed conduct, or other contractual devices. Without the ability to recover the equivalent of a royalty from TiVo's litigation that arose because TiVo failed to obtain a license agreement, the Goldwassers' "entitlement to royalties would be subject to forces completely beyond their control." J.A. 418. Accordingly, we cannot conclude that the arbitrators, who are "often selected for expertise in the commercial aspect of the dispute," Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002), came to a commercially absurd result.

3. Fundamental Fairness

TiVo argues that vacatur was warranted because the arbitration panel deprived it of a fundamentally fair hearing pursuant to 9 U.S.C. § 10(a)(3) by relying on the implied covenant of good faith and fair dealing, despite the Goldwassers not advancing that theory. Specifically, TiVo contends that, without notice that the decision could be based on this theory of recovery, it was unable to place relevant evidence into the record and to argue against this resolution. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997) (stating that evidence exclusion under § 10(a) not erroneous unless violative of "fundamental fairness"). We are not persuaded.

The panel reasoned that implicit in the PLA, viewed as a whole, was the obligation to pay royalties under the circumstances now presented because, without such an obligation, the object of the PLA would be hindered. Thus, according to the panel, the Goldwassers' right to royalties from the EchoStar settlement is an "implied promise . . . so

9

interwoven into the contract as to be necessary for effectuation of the purposes of the contract." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks omitted). The panel effectively gave notice of this reasoning when, after the hearing but before the final award, it requested briefing on "whether the situation underlying the arbitration was contemplated by the parties at the time they negotiated and executed the PLA." Because TiVo did not request—and therefore the arbitration panel did not refuse—an opportunity to reopen the record to answer this inquiry, and the evidence needed to answer this inquiry is substantially the same as that needed to combat the arbitration panel's ultimate reliance on the covenant of good faith and fair dealing, the proceeding was not fundamentally unfair. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d at 21.

Moreover, no additional notice was necessary to assure fundamental fairness because the covenant of good faith and fair dealing "is in aid and furtherance of other terms of the agreement of the parties." Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 237 (1983). It is therefore implicit in any contract and need not be raised separately from a breach of contract claim. See ERE LLP v. Spanierman Gallery, LLC, 94 A.D.3d 492, 493, 942 N.Y.S.2d 472, 473 (1st Dep't 2012) ("[I]t is unnecessary for a party to a contract dispute to raise the issue of good faith. The duty of good faith and fair dealing is implicit in the performance of contractual obligations . . . ." (internal quotation

10

marks omitted)).[2] In sum, because the Goldwassers had no obligation to raise the covenant of good faith and fair dealing separately from their breach of contract claim, it was not fundamentally unfair for the panel not to notify TiVo specifically that this doctrine would play a role in its final decision.

4. Arbitration Panel Authority

TiVo argues that the arbitration panel exceeded its powers by basing the award on the implied covenant of good faith and fair dealing because the covenant was not raised by the Goldwassers, and arbitrators lack authority to consider "issues beyond those the parties have submitted for her consideration." Jock v. Sterling Jewelers Inc., 646 F.3d at 122. It is beyond cavil, however, that the panel was tasked with deciding whether the PLA entitled the Goldwassers to royalty payments based on TiVo's settlement with EchoStar, and that is precisely the issue it decided. Indeed, had the Goldwassers specifically alleged a breach of the covenant of good faith and fair dealing, that claim would have been duplicative of their breach of contract claim. See Netologic, Inc. v. Goldman Sachs Grp., Inc., 110 A.D.3d 433, 433–34, 972 N.Y.S.2d 33, 34–35 (1st Dep't 2013) (dismissing as duplicative breach of implied covenant of good faith and fair dealing claim because breach of contract claim arose from same facts and sought identical damages). TiVo's argument to the contrary is merely that the panel's reasoning did not wholly track the parties' arguments,

---

[2] To the extent TiVo contends that the award was not fundamentally fair because it relied on second-hand testimony regarding the PLA negotiations, we are not persuaded. See Bell Aerospace Co. Div. of Textron v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974) ("In handling evidence an arbitrator need not follow all the niceties observed by the federal courts."); accord Tempo Shain Corp. v. Bertek, Inc., 120 F.3d at 21.

and is unaccompanied by citation to any case in which alternative reasoning of this sort was found to exceed the arbitrators' authority. Rather, TiVo's supporting citations involve instances where arbitrators went beyond alternative reasoning and instead awarded relief not requested by the parties. See, e.g., Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc., 607 F.2d 649, 651–52 (5th Cir. 1979) (vacating award that included damages for charter hire despite concession that charter hire not at issue); PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 637–38 (E.D. Pa. 2009) (vacating award that, inter alia, eliminated provision of agreement where parties disputed only proper calculation under, and consequences of, that provision). Accordingly, we conclude that the arbitration panel did not exceed its powers.

We have considered the remainder of TiVo's claims and consider them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

12