**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4692-14T3

TERENCE M. HAIGNEY,

    Plaintiff-Respondent,

v.

U-HAUL CO. OF NEW JERSEY, INC.;[1]
U-HAUL INTERNATIONAL, INC.,

    Defendants-Appellants.

_____

Argued November 10, 2016 — Decided June 29, 2017

Before Judges Simonelli, Carroll and Gooden
Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County, Docket
No. L-3542-14.

Daniel P. Waxman (Bryan Cave LLP) of the New
York bar, admitted pro hac vice, argued the
cause for appellants (Mr. Waxman and Post &
Schell, P.C., attorneys; Mr. Waxman and
Jonathan E. Ginsberg (Bryan Cave LLP), on the
briefs).

David P. Corrigan argued the cause for
respondent (Hobbie, Corrigan & Bertucio, P.C.,
attorneys; Mr. Corrigan and Michael R. Hobbie,
on the brief).

_____

[1] Referenced in the record also as U-Haul of New Jersey, Inc.

PER CURIAM

Defendants U-Haul Co. of New Jersey, Inc. and U-Haul International, Inc. (collectively U-Haul) appeal from the May 13, 2015 Law Division order, which confirmed a June 19, 2014 arbitration award on liability in favor of plaintiff Terence M. Haigney and dismissed U-Haul's counterclaim with prejudice.[2] For the following reasons, we affirm.

## I.

We derive the following facts from the record. Haigney was a fencing contractor since 1995. In his business, he often rented trailers to transport bags of cement to his job sites using this procedure: he would drive to the trailer supplier, the trailer supplier would attach a trailer to his vehicle, and he would then drive to the cement supplier and load bags of cement onto the trailer and bring them to the job site.

On November 4, 2011, Haigney rented a six-foot by twelve-foot open trailer from U-Haul. He went to U-Haul's facility in Middletown, where U-Haul's employee, Thomas Bia, attached the trailer to his vehicle. Haigney drove from U-Haul's premises to a local Home Depot, where he loaded twenty bags of cement weighing

---

[2] The arbitration was bifurcated, with the liability phase proceeding first. Since this appeal only concerns the arbitrator's award on liability, we do not address the damage award.

eighty pounds each into the trailer. He then drove two miles to a train station, where he picked up two day laborers. At no time did Haigney notice any problems with the trailer or feel the trailer whip or sway while he was driving.

While driving to his next destination, Haigney came to an abrupt stop at a traffic light. After the light changed, he accelerated to approximately thirty-five miles per hour and proceeded downhill. As he drove, his steering wheel started shaking violently and the trailer started swaying from side to side. The trailer eventually disconnected and crashed into the rear of his vehicle, punching a hole in the bumper and causing the vehicle to flip over and the trailer to jackknife into a guardrail.

Haigney sustained serious permanent injuries as a result of the accident. In a recorded statement given to an insurance investigator from his hospital bed five days after the accident, Haigney said that the trailer fishtailed uncontrollably, but he had no idea why this happened. He said "I've had numerous trailers. The guy put it on incorrectly or it was a faulty trailer, I have no idea." He also said that he loaded cement in the trailer and evenly distributed the load.

Haigney filed a complaint against U-Haul in the Law Division. In lieu of filing an answer, U-Haul filed a motion to compel binding arbitration pursuant to an arbitration agreement that

compelled arbitration before a single arbitrator in accordance with the commercial arbitration rules of the American Arbitration Association (AAA). The arbitration agreement was governed by the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 to 307. The court granted the motion.

During discovery, Haigney advanced several theories of liability, including: (1) the ball clamp that held the trailer onto the trailer hitch that was attached to his vehicle was defective and fractured and disconnected the trailer; (2) the trailer's brakes were inoperable because U-Haul failed to install brake fluid; and (3) U-Haul's employee improperly attached the trailer to his vehicle (the improper attachment theory). Haigney asserted that after he left U-Haul's premises, the inoperable brakes created pressure on the ball clamp and ball mount when he braked. This condition weakened the connection between the ball clamp and ball mount, which was already weakened because the trailer was attached improperly and the ball clamp was defective. Consequently, the ball clamp detached and the trailer began to sway, causing the crash.

Haigney asserted the improper attachment theory several times in his answers to U-Haul's interrogatories. Although Haigney's interrogatory answers were not presented to the arbitrator, retired Judge Marina Corodemus, they are in the record on appeal.

Nevertheless, there was other evidence supporting Haigney's improper attachment theory. Bia testified at his deposition, without objection, about the procedure he used to attach a trailer to a vehicle. He testified that after connecting a trailer to a vehicle, he would make sure it was properly attached by pushing back on the ball clamp and listening for a click to make sure the ball clamp was "all the way tight." He also testified that making sure the ball clamp was tight kept it from separating from the trailer coupler while driving, and acknowledged that if the ball clamp was installed too loosely, "[i]t would come off and screw everything up[]" and "cause problems." This deposition testimony was read into the record during Haigney's case-in-chief without objection.

On direct examination during the arbitration hearing, U-Haul's representative and liability expert, James D. Fait, testified about and demonstrated the proper method for attaching a trailer. On cross-examination, he testified, without objection, that the person attaching the trailer must tighten the ball clamp until it is tight and that listening for one click was "not the proper procedure. That's not what they are trained and that's not the proper installation." Fait agreed with Bia that if the ball clamp was not properly tightened, the trailer coupler "could come off the ball [clamp], if you hit a bump or something like this[.]"

Fait also acknowledged that if the trailer was not secured properly and disconnected, it could possibly cause a crash.

In addition to this evidence, in his written summation on liability, Haigney asserted, in part, that Bia's improper securing of the ball clamp to the trailer coupler, which caused the ball clamp to separate from the trailer coupler, was a proximate cause of the accident. In its written summation on liability, U-Haul responded in a footnote that Haigney's experts did not present the improper attachment theory. However, U-Haul did not ask Judge Corodemus to disregard or strike this theory; rather, U-Haul argued that Fait had properly discredited it.

U-Haul conceded that the trailer lacked operable brakes due to a lack of brake fluid, but asserted this was not a proximate cause of the accident. Rather, U-Haul averred that Haigney's improper loading of the cement bags onto the trailer with 100% of the weight in front of the centerline was the sole proximate cause of the accident. U-Haul concluded that the improper loading caused a catastrophic loss of control as Haigney accelerated, and the ball clamp fractured during the rollover of his vehicle, causing the trailer to separate from the trailer coupler.

At his deposition, Haigney testified that he knew the proper requirements for loading a trailer. He testified that the majority of the weight should be ahead of the wheels, and noted that the

U-Haul contract he signed stated "[y]ou should always . . . load trailer heavier in the front[.]" As to how he loaded the cement bags in the trailer on the day of the accident, he testified that "[y]ou start in the front and then you behind -- you know, one row of them and then two, you know." He did not recall whether he loaded any of the bags to the rear of the centerline.

At the arbitration hearing, Haigney testified that he evenly distributed the load of cement bags across the length of the trailer bed. He explained that the trailer had to be loaded evenly with about sixty percent of the weight loaded in the front half and the remaining forty percent loaded behind the front half. He also explained how he loaded the cement bags on the day of the accident: he started in the front and put a first row of three bags approximately two feet from the front wall, then put the next row of three bags approximately one foot behind the front row, and then put the last two bags approximately one foot behind the second row. He then looked at the trailer from the side to make sure it was level. He testified that he did not load all of the bags in the front of the trailer, and that such loading "would be completely unlevel[, and he] probably wouldn't have been able to even get out of the [U-Haul] parking lot without [the trailer] swaying all over the place." He reviewed an exhibit that showed the side of a similar open trailer attached to a similar vehicle

with twenty bags of cement all loaded in the front, and testified that this was not the way his trailer looked from the side after he loaded it. He emphasized that the trailer depicted in the exhibit was so off level that the back wheels were almost off the ground and no one would ever drive the trailer that way.

Antonio Sic, one of the day laborers, testified at the arbitration hearing that prior to entering Haigney's vehicle, he looked and saw that the cement bags were properly loaded on the trailer and did not need to be fixed or rearranged. He testified that the trailer was level and the cement bags were not loaded entirely in the front. He also reviewed an exhibit showing twenty cement bags all loaded up against the front wall of a similar trailer, and testified this was not how the cement bags were loaded in the subject trailer.

Before the second day of the arbitration hearing, U-Haul conducted additional testing by placing twenty cement bags in a similar trailer in the manner in which Haigney had testified at the arbitration hearing. U-Haul took three photographs of the trailer, which it sought to introduce into evidence to rebut Haigney's arbitration testimony about how he loaded the cement bags, which U-Haul asserted was diametrically different from his deposition testimony. Judge Corodemus declined to consider the rebuttal evidence based on a lack of notice to Haigney, and because

the photographs were not offered for the truth of the matter asserted and were merely illustrative.

In a June 19, 2014 written liability award, Judge Corodemus addressed the alleged inconsistency between Haigney's deposition testimony and arbitration testimony about how he loaded the trailer. She found his arbitration testimony was consistent with his statement to the insurance investigator and was corroborated by Sic's testimony. She concluded that Haigney had properly loaded the trailer.

Judge Corodemus did not find that the ball clamp was defective; rather, she found it was damaged as a result of the accident. However, she found that U-Haul breached its duty to Haigney by allowing him to leave its premises with a trailer that had inoperable brakes, and by failing to properly attach the trailer to his vehicle. She concluded that these two conditions were a proximate cause of the accident. She also concluded that Haigney's failure to confirm that the trailer was properly attached was also a proximate cause of the accident. Accordingly, Judge Corodemus apportioned U-Haul's liability at eighty percent and Haigney's at twenty percent. In a September 11, 2014 written damages award, she awarded plaintiff $1,800,000, molded to $1,440,000.

Following U-Haul's failure to pay the damage award, Haigney filed a verified complaint and order to show cause to confirm the two arbitration awards. U-Haul sought to vacate the awards, arguing that Judge Corodemus exceeded her authority by finding liability on the improper attachment theory, of which it had no notice and which was not alleged by Haigney or supported by lay or expert evidence. U-Haul also argued that Judge Corodemus exceeded her authority and violated due process by barring the rebuttal photographs.

In a May 13, 2015 oral opinion, Judge Jamie S. Perri confirmed the arbitration awards. Judge Perri found that Judge Corodemus did not exceed her authority by finding negligence based on improper attachment, reasoning as follows:

> [Judge Corodemus'] decision was based on the submissions and testimony presented in the arbitration hearing. Her decision was in the scope of [the] submissions because she relied on the evidence to determine that each party acted negligently. This did not delve into an area of law foreign to the evidence or the arguments presented by either side.
>
> [Haigney] originally sought to prove [U-Haul's] liability through allegations of negligence in maintenance and inspection. Broadly construed, Judge Corodemus' decision was based on the theory that the U-Haul employee who attached the trailer was negligent in maintaining the trailer coupler and hitch and failing to inspect the coupler and hitch to insure it was properly attached.

A-4692-14T3

Here, Judge Corodemus was presented with a set of facts and was obligated to determine whether, based upon those facts, U-Haul owed a duty to Haigney, the violation of which proximately caused his injures. A careful review of the arbitration record discloses that in September 2013, Haigney stated in response to U-Haul's interrogatories, that damages were being sought on the basis that "the U-Haul employee improperly connected and improperly maintained [the] trailer to [his vehicle]."

. . . .

Fait demonstrated the proper method for attaching the coupler and ball mount on the date of the accident.

. . . .

As such the evidence presented to Judge Corodemus during the course of the hearing established the proper method for securing the trailer to the vehicle, a method that U-Haul . . . allegedly taught to its affiliates through training sessions and videos. Evidence was also produced that Bia, a U-Haul . . . employee had not properly secured the trailer to the vehicle before it left the U-Haul facility, and that he was of the belief that "a click" was sufficient to secure the trailer.

[U-Haul] . . . cannot claim surprise in this regard since [it was] already in possession of Bia's testimony and knew or should have known of their own procedures and instructions for inspecting the trailer and securing it to the vehicle before releasing it to the customer.

. . . .

Judge Corodemus' conclusions were supported by the law and the factual record

11

developed during the arbitration hearing. No expert was required to add to Haigney's position that Bia's negligence in failing to properly secure the trailer was a proximate cause of the accident. And Judge Corodemus did not exceed her authority in rendering her final decision and allocating negligence[.]

. . . .

[T]he issue presented to Judge Corodemus was whether U-Haul was negligent and whether its negligence was a proximate casue of the accident. The fact that she based her decision on evidence developed during the arbitration hearing which indicated negligence for reasons other than those originally embraced by [Haigney], does not render her decision unenforceable.

Simply stated, Judge Corodemus was asked to render decisions on liability and damages based upon the evidence presented to her. She carefully considered the evidence and came to a reasonable conclusion that coincided with the credible evidence regarding the cause of the accident.

She assessed liability and apportioned it between the parties. She did not exceed her authority and did not consider or rule on issues that were not properly before her.

Addressing whether Judge Corodemus exceeded her authority and violated due process by barring rebuttal evidence, Judge Perri found as follows:

U-Haul . . . attempts to equate evidentiary decisions to misconduct under 9 [U.S.C.A. §] 10(a)(3). And argues that Judge Corodemus denied U-Haul a fair hearing because she would not consider rebuttal evidence regarding the loading of the trailer. . . .

This argument is simply without merit. As previously noted U-Haul's defense was based upon its claim that Haigney improperly loaded the trailer and that this was the sole proximate cause of the accident. During the course of the arbitration U-Haul offered extensive evidence on this issue and had the opportunity to cross examine Haigney.

It was unquestionably within Judge Corodemus' discretion to rule on evidence issues such as denying [U-Haul's] application to bar [Haigney's] expert witnesses, or in declining to permit as rebuttal tests that were performed by [U-Haul] while the arbitration hearing was ongoing. The fact that U-Haul was not given leave to present further cumulative evidence on the issue, did not deprive it of a fair hearing. And cannot even remotely be considered misconduct on the part of [Judge Corodemus]. . . . U-Haul . . . [has] not shown that such decisions were without basis or that they rise to the level of warranting the invalidation of the arbitration award.

This appeal followed.

Because a trial court's decision regarding an arbitration award is a decision of law, our review is de novo, but with a recognition of the wide authority bestowed upon the arbitrator by statute. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (citations omitted); Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010); see also Metromedia Energy, Inc. v. Enserch Energy Servs., 409 F.3d 574, 578 (3d Cir. 2005) (applying the de novo standard of review to an arbitration award), cert. denied, 546 U.S. 1089, 126 S. Ct. 1021, 163 L. Ed. 2d 852 (2006).

Essentially, we must determine whether the arbitrator and the trial court have each adhered to the requirements of the controlling statute. Minkowitz, supra, 433 N.J. Super. at 136.

The FAA is the controlling statute here. "Review of arbitration awards under the FAA is 'extremely deferential.' Vacatur is appropriate only in 'exceedingly narrow' circumstances[.]" Metromedia Energy, Inc., supra, 409 F.3d at 578 (citations omitted). Under the FAA, a binding arbitration award may only be vacated :

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> [9 U.S.C.A. § 10(a).]

Prior to Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), it was widely accepted that a court could also vacate an award if the arbitrator

14                                                          A-4692-14T3

showed a manifest disregard for the law. Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969). Post-Hall Street, the Supreme Court and Third Circuit case law left open the question of whether the manifest disregard standard still applies. In any event, even if it does apply, to demonstrate manifest disregard, the party seeking to vacate an award must show that the arbitrator acknowledged and subsequently disregarded an explicit, well-settled, and clearly applicable legal rule in making her decision. Paul Green Sch. of Rock Music Franchising, LLC. v. Smith, 389 F. App'x 172, 177 (3d Cir. 2010).

"Likewise, an arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Metromedia Energy, Inc., supra, 409 F.3d at 578 (citation omitted). In reviewing an arbitration award, courts do not consider claims of factual or legal error by an arbitrator. Major League Umpire Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279-80 (3d Cir. 2004), cert. denied, 543 U.S. 1049, 125 S. Ct. 861, 160 L. Ed. 2d 769 (2005). "[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990) (internal citations omitted).

Further, 9 U.S.C.A. § 10(a)(3) cannot be read "to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." Sherrock Bros. v. DaimlerChrysler Motors Co., LLC, 260 F. App'x 497, 501 (3d Cir. 2008) (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)). 9 U.S.C.A. § 10(a)(3) does not require arbitrators to hear all evidence proffered to them; an arbitrator is only required to provide parties with "an adequate opportunity to present its evidence and argument." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). Misconduct under 9 U.S.C.A. 10(a)(3) "will not be found 'unless the aggrieved party was denied a fundamentally fair hearing.'" Vitarroz Corp. v. G. Willi Food Int'l Ltd., 637 F. Supp. 2d 238, 248 (D.N.J. 2009) (quoting Sherrock Bros., supra, 260 F. App'x at 501).

On appeal, U-Haul does not allege that the liability award was procured by corruption, fraud, or undue means, or that there was evident partiality or corruption. 9 U.S.C.A. § 10(a)(1)-(2). Rather, U-Haul argues that Judge Perri erred in confirming the arbitration award because Judge Corodemus exceeded her authority and showed a manifest disregard for the law by finding liability on an issue not advanced by Haigney, for which it had no notice; and Judge Corodemus exceeded her authority and engaged in

misconduct in refusing to hear evidence pertinent and material to the controversy.

We find no merit in U-Haul's argument. The sole issue in this case was negligence, and that was the only issue Judge Corodemus decided. Haigney consistently asserted U-Haul's negligence based on deficient maintenance, inspection, and operation of the ball clamp and ball mount. Haigney relied in part, on the improper attachment theory, and advanced this theory of liability well before the arbitration hearing in his discovery responses, placing U-Haul on notice it was an issue in this case. Further, the parties presented the improper attachment theory during the arbitration hearing and in their post-hearing submissions without objection. We agree with Judge Perri that Judge Corodemus' reliance on evidence developed during the arbitration hearing which indicated negligence for reasons other than those Haigney originally advanced did not render the liability award unenforceable. We are satisfied that Judge Corodemus did not consider or rule on issues that were not properly before her or show a manifest disregard for the law. She properly ruled on the sole issue — negligence.

Nor did Judge Corodemus exceed her authority or engage in misconduct in refusing to hear evidence pertinent and material to the controversy. Haigney did not change his testimony at the

arbitration hearing. He did not testify at his deposition that he loaded the trailer unevenly, and he never deviated from his statement to the insurance investigator that he evenly distributed the load of cement bags. His arbitration testimony was consistent that he had evenly loaded the trailer, and was corroborated by Sic's testimony.

In any event, AAA R-34 gave Judge Corodemus broad discretion to admit or bar evidence: "The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant." During the arbitration hearing, U-Haul presented extensive evidence and had the opportunity to cross-examine Haigney on how he loaded the trailer. The fact that Judge Corodemus declined to consider the three photographs did not deprive U-Haul of an adequate opportunity to present its evidence and argument, or deny it a fair hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4692-14T3